OPINION OF THE COURT
Alfred Donati, J.
Defendant Gerald Cachoiari was arrested on August 26, 1986, and charged with criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [1]) and criminal impersonation in the second degree (Penal Law § 190.25 [1]). Defendant moved to suppress physical evidence seized by, and oral statements made to, law enforcement officials and the court ordered a combined Mapp/Huntley hearing.
The matter was referred to me on March 2, 1987 for the ordered Mapp/Huntley hearing, at which time defense counsel advised that he was ready for the hearing except that the People had not provided (as required, on various grounds according to the defense) a transcript of the 911 call to police communications headquarters which originated this matter (the 911 tape). The People claimed production of the 911 tape was not required. In the course of that oral argument it developed that the 911 tape was no longer available and that, indeed, it had been destroyed (it appears from the memoranda submitted by both sides that the destruction of the 911 tape was made in the normal course of police procedure when its specific preservation had not been requested within the prescribed time period).
In addition to the foregoing, defendant contended that he was entitled to have the People produce at the hearing for defense cross-examination, on the issue of probable cause, the 911 police operator who transmitted, by radio, the information received on the 911 telephone call (the "sender” of the "911 transmission” or "radio run”) to the police officers involved in defendant’s arrest in this case; the defense also indicated it could be entitled to have the People produce at the hearing the original caller (or "informant”) to the 911 operator, all of which the People opposed.
Under the foregoing circumstances, the court directed both sides to submit memoranda of law as to the issues raised and continued the hearing until its decision on those issues, which is set forth hereinafter.
*1118 BACKGROUND
Defendant acknowledges that the parties entered into a voluntary disclosure agreement (VDA) on November 18, 1986, in which, in return for defendant’s promise to refrain from engaging in formal discovery motion practice as prescribed by CPL article 240, the People agreed to furnish the defendant with: (1) the substance of oral statements of defendant, data relating to identification of defendant, and acknowledgment of the People’s duty under Brady; (2) all items contained in CPL 240.20 which exist in the case; (3) arrest and complaint reports and certain other documentary material, and (4) pertinent medical records. The VDA gives the defendant the benefit of items he might not ordinarily be entitled to under CPL article 240 and CPL 200.95. But the VDA does not provide for routine ordering, or production, of a 911 tape or radio run. The minutes of the proceedings on that date show that among other items requested by the defense was the "sprint 911 printout”.
The People thereafter provided the 911 "Incident Record Listing by Job Number”, the so-called sprint report or sprint printout containing, as defense counsel acknowledges "a summary of the radio run”, that is, a summary of the transmission from the 911 operator to the arresting police officers, which the defense claims, as indicated above, does not satisfy the People’s alleged requirement to produce the 911 tape. (No claim is made by the defense that the People failed to comply with the voluntary disclosure agreement in any other respect.) Defendant now urges that because the "sprint” provided is merely a summary of the taped conversation between the 911 caller and the 911 dispatcher, the destruction of the 911 tape may have resulted in the destruction of potential Rosario and Brady* material and for that reason sanctions should be imposed upon the People and, in any event, that without the tape the People cannot meet their burden of establishing reasonable cause to stop and search the defendant.
PRODUCTION OF THE 911 TAPE
Defendant’s position raises a question of first impression as to whether there exists an affirmative obligation on the People to preserve and make available to the defense the original *1119 tape or transcript of the 911 call to police headquarters which initiated the case, independent of as well as pursuant to the provisions of the VDA (a type generally in use by District Attorneys’ offices in New York City and in this case specifically here in Bronx County), particularly insofar as such an agreement incorporates the requirements of CPL 240.20.
Defendant argues that the People were required to preserve the 911 tape because, inter alla, CPL 240.20, incorporated in the VDA as noted, provides for the discovery of "tapes”. On the subject of "tapes” CPL 240.20 (1) (g) provides that the prosecutor shall disclose to the defendant upon demand "(g) [a]ny tapes or other electronic recordings which the prosecutor intends to introduce at trial”. Since the 911 tape in question here does not exist and thus will not be introduced at trial, CPL 240.20 (1) (g) does not apply to that tape recording.
Nor is defendant’s position based upon Rosario or Brady grounds applicable here, for several reasons. In the first place the 911 tape is not in the possession of the People and having been destroyed cannot be produced (the question of fault or possible sanctions resulting from that destruction is treated hereinafter). Secondly, it appears from the memoranda submitted to the court that the caller to the 911 operator cannot be identified (having given only his name as "Smith”), and thus he will not be called as a witness by the People, where the 911 tape may have had a use in cross-examination (defendant’s position as to the obligation of the People to produce caller "Smith” is also treated below).
Nor is the court persuaded by defendant’s speculation that the tape may have contained potentially exculpatory material, and thus that it should have been preserved by the District Attorney. Defense counsel demonstrates no basis for a belief on the part of the District Attorney, or of this court, that the tape of the original conversation contained any such material or, indeed, that it contained any substantive information whatsoever other than that contained in the sprint printout provided. (See, People v De Zimm, 102 AD2d 633, 635 [3d Dept 1984].)
Accordingly, the People had no obligation to preserve the 911 tape, either by virtue of the VDA here, including the provisions of CPL 240.20 incorporated therein, or by virtue of the applicable principles of Brady or Rosario.
Finally, defendant argues that it was incumbent upon the People to have preserved the 911 tape from destruction, and *1120 that not having done so, suppression sanctions should be imposed on the People’s case here. Defendant points out that it waives its subpoena rights for a certain period of time pursuant to the terms of the VDA (in return for certain concessions in that agreement by the District Attorney) and, thus, instead of subpoenaing the 911 tape itself, made demand upon the District Attorney’s office for its production and made such demand during the period the tape was in existence and would have been preserved upon request of the police department by the District Attorney’s office. The defense contends that by the time it learned that the District Attorney’s office had not taken steps to preserve the tape, it had already been destroyed and thus was beyond subpoena by the defense. It is the People’s position that defendant did not make clear and timely demand for the 911 tape in that the sprint report or sprint printout was all that was requested by defendant and all that was required by the People’s case and that it was not until a point in time after the tape in fact had been destroyed that defense counsel made clear it was demanding the 911 tape itself. Indeed, the People represent that if clear and timely demand for the tape has been made, they would have complied.
As noted above, the minutes of the proceedings of November 18, 1986, provided by the defendant, show that defense counsel specifically requested the "sprint 911 printout” — and that is what was provided by the People.
The destruction of the tape consequently having occurred neither by design nor negligence on the part of the People, there is no need to consider the issue of possible sanctions.
PRODUCTION OF THE INFORMANT AND/OR 911 OPERATOR
Defendant also takes the position that the court should compel the People to produce at the suppression hearing the informant, that is, the caller to the 911 operator and/or the sender of the "radio run” transmitted thereafter. Defendant contends that it is incumbent on the People to produce the person who provides the People with probable cause, that is, either the sender of the radio transmission or the informant, in order for the People to meet their burden at the hearing (citing People v Havelka, 45 NY2d 636).
The People set forth in their memorandum of law allegations of fact which it maintains establishes under the applica *1121 ble authorities that it is not necessary to produce either the informant or the sender of the radio run. However, since those allegations are not submitted in affidavit or affirmation form, they are not before the court as statements of fact and the court treats them as a proffer by the People. While it may be, as the People contend, that if the facts proffered are established, it is unnecessary for the People to call as a witness either the informant or the sender of the radio run, the facts remain to be determined at the hearing which will resume upon the rendering of this decision.
At the same time, in fairness, since the issue of production of these witnesses has been raised, and in order that both sides be fairly apprised of the court’s position on the issue as well as in the interests of judicial efficiency, at this juncture suffice it to say that the court recognizes that in some instances it would be necessary to compel the production of such witness or witnesses, and in some instances it would not, and that determination is to be made on the basis of the specific facts shown at the hearing. (People v Benjamin, 51 NY2d 267, 270 [1980]; People v Havelka, 45 NY2d 636, 641 [1978], supra; People v De Bour, 40 NY2d 210, 221 [1976]; People v Lypka, 36 NY2d 210, 213, n 2 [1975].)
The hearing will now proceed in accordance with the foregoing.

 People v Rosario, 9 NY2d 286 (1961); Brady v Maryland, 373 US 83 (1963).