OPINION OF THE COURT
Michael D. Stallman, J.
Can administrative convenience justify the destruction of subpoenaed evidence? What is the appropriate remedy for the erasure of subpoenaed police communication tapes?
FACTS
The salient facts are not in dispute. Defendant was arrested on April 7, 1990. The arresting officer’s sworn complaint alleges, inter alla, that defendant was driving a stolen 1979 Oldsmobile at the time and place of arrest. A Sprint printout indicates that the officer spoke with his command during the pursuit. The On-Line Booking System (OLBS) arrest worksheet, a form routinely prepared during the booking process, indicates that the car had not been reported stolen.
At issue for determination at a Dunaway hearing is the basis for defendant’s stop and arrest. What did the officer know about the vehicle’s status, and when did he know it? The radio communications recorded prior to the arrest would be material to the court’s determination.
Upon defense’s request, Judge William Miller signed a subpoena duces tecum dated May 15, 1990 ordering the police *888 department to produce the "Sprint record, 911 tape, radio transmission and other alarms” in court on June 21, 1990. The subpoena contained the customary warning that failure to comply would be punishable as a criminal contempt, with penalties including fine or imprisonment. The subpoena was served on the Police Department Communications Division on June 5, 1990.
By letter dated June 7, 1990, Michael Amarosa, Director of Communications, acknowledged receipt and asked defense counsel to review an enclosed Sprint summary to decide whether she would "in fact, require extraction and reproduction of the actual tape”, to avoid "incurring unnecessary expense and wasting limited Police Department personnel resources”. The letter indicated that the master tape would be erased either 90 days from the date of transmission or 30 days after the date of the notice, whichever date is later, unless a "follow-up request” were made prior to the deadline.[1] Defense counsel responded, apparently after the deadline. On July 25, 1990 defense counsel received the returned subpoena rubber-stamped that the master tape had been erased on July 10, 1990. Defendant now moves for dismissal, claiming that his defense was irrevocably prejudiced by the tape’s erasure.
I. DISOBEDIENCE OF THE SUBPOENA
A subpoena duces tecum directs its recipient to bring specified documents or things to court for use at hearing or trial and enables the court to examine the items and make appropriate direction regarding their use in the action. (CPLR 2301 et seq.; People v Gissendanner, 48 NY2d 543.) It thus may be used to secure and preserve evidence.
A subpoena duces tecum directed to a governmental agency must be issued by a court. (CPLR 2307; CPL 610.20 [3].) It is a court order, not a party’s discovery demand or notice. (See, People ex rel. Hickox v Hickox, 64 AD2d 412 [1st Dept].) A subpoena is not a mere request, susceptible to being followed *889 or not, according to the whim of its recipient. To permit the recipient to unilaterally determine the time and manner of compliance would negate the very nature of a subpoena. Once the court has determined, by signing the subpoena, that material shall be produced, the recipient has a simple choice: comply or move to quash. (See, CPL 610.40; CPLR 2304.) If the recipient elects to do neither, it voluntarily subjects itself to the inevitable consequences. Thus, once a subpoena has been properly served, the focus of the court’s inquiry must be on the recipient, not the server, unless the recipient moves to quash.[2]
At issue here, therefore, is the police department’s obligation to comply with a facially valid court order, not counsel’s noncompliance with a unilaterally imposed administrative procedure.
Defense counsel acted properly by serving a court-ordered subpoena for specifically designated and correctly described items. She did so at a time when the tapes concededly were extant and accessible. Having done so, she had no obligation to do anything else. The subject subpoena was served 16 days before the return date, well in excess of the statutorily required notice period (CPLR 2307 [a]) and far in advance of the erasure deadline. The police department had more than an adequate opportunity, by its own guidelines, to comply or to seek to quash.
The police department may have valid concerns that tapes are automatically requested without thought to actual need;[3] it has no authority to compel an attorney or Judge to do anything not statutorily required before it complies with a facially valid, timely subpoena. To hold otherwise would permit an administrative agency, under the guise of its own rule-making power, to amend State law. This would be a clear *890 ultra vires act in contravention of the principle of separation of powers.
Willful disobedience of a court-ordered subpoena is considered sufficiently serious to constitute a criminal contempt. (See, CPLR 2308; Judiciary Law §§ 750, 751 [civil remedy of criminal contempt]; Penal Law § 215.50 [3] [crime of criminal contempt in the second degree].) When a law enforcement agency deliberately ignores a court order, it thereby undermines the rule of law itself. The police department can assert no unique privilege to pick over court orders and choose to enforce only those it deems worthy of enforcement. When the police department pursues a policy which arrogates to itself a veto power over the courts, it further erodes public confidence in law enforcement. (See, Boung Jae Jang v Brown, 161 AD2d 49, 56 [2d Dept].)
The police department here is not a mere bystander. Unlike many subpoena recipients, it is not a disinterested holder of material relevant to litigation. The police department is the agency which arrested defendant and initiated his prosecution. The subpoenaed material is clearly relevant to the propriety of the police’s own actions; indeed, its relevancy has never been disputed by police or prosecutor. (Cf., People v Cabon, 148 Misc 2d 260 [Crim Ct, NY County]; People v Morrison, 148 Misc 2d 61 [Crim Ct, NY County]; People v Cruz, NYLJ, Oct. 1, 1990, at 25, col 5 [Crim Ct, NY County].) It is axiomatic that one may not be the judge in one’s own cause. If the court were to permit the police department to limit or condition its compliance with a subpoena, it would improperly delegate judicial power to an interested party. (See, United States v Nixon, 418 US 683.) Moreover, it would enable the police department to insulate itself from review and deprive the defendant of a meaningful opportunity to challenge the police action.
Accordingly, the court finds that the erasure constituted an unjustifiable defiance of a court order which must be appropriately punished.
II. ROSARIO VIOLATION
The prosecution has an independent duty to turn over to the defense, prior to any hearing or trial, any written or recorded statement in its possession, made by a witness it intends to call. (People v Rosario, 9 NY2d 286; CPL 240.44 [1]; 240.45 [1] [a].) The statute does not require the defense to *891 apply for a subpoena or make any demand or motion as a condition precedent.
Even if such a statement may be discoverable by demand or motion (see, e.g., CPL 240.20 [g]; 240.40 [1] [a]) the defense need not take such action unless it desires access at an earlier stage of the action. The prosecution has a correlative duty to use reasonable care to preserve such statements in its possession. (People v Martinez, 71 NY2d 937; see, People v Kelly, 62 NY2d 516; United States v Bryant, 439 F2d 642 [DC Cir].) However, "[wjhere the defense has provided specific notice of its interest in particular material, heightened rather than lessened prosecutorial care is appropriate.” (People v Vilardi, 76 NY2d 67, 77.)
The master tapes kept by the Police Department Communications Division are simply a storage medium. The tapes themselves are not Rosario material. Audio tape should be treated no differently, for Rosario analysis, from any other storage medium, e.g., paper, videotape, or computer disc. If a storage medium contains Rosario material, the Rosario material must be accurately copied, without editing, in the same medium.
It is conceded that the master tapes contained recorded conversations of the arresting officer and his command regarding the status of the car pursued. The arresting officer would be a necessary witness at the Dunaway hearing and trial, and undoubtedly would be questioned about his knowledge and/or assumptions about defendant and the car. There can be no doubt that the subpoenaed tape contained Rosario material. (Compare, People v Williams, 165 AD2d 839 [2d Dept] [Sprint summary of 911 call held not Rosario material, when call placed by unidentified person not called as witness]; People v Cachoian, 135 Misc 2d 1116 [Crim Ct, Bronx County] [911 tape of unidentified caller erased prior to suppression hearing; no Rosario violation found].)
It is immaterial that the District Attorney was not a party to the adoption of the police erasure policy and did not actively participate in destruction of the subject tape.[4] While the District Attorney does not control the police department, *892 both law enforcement agencies must be considered in privity in conducting prosecutions initiated by a police-made arrest. (See, People v Churba, 76 Misc 2d 1028 [Crim Ct, NY County].) Thus, for Rosario-rule purposes, recorded statements held by the police must be deemed in the prosecutor’s constructive possession.
Given the prosecution’s affirmative obligation to preserve such evidence, it must promptly ascertain whether the police have recorded witness statements, written or oral, irrespective of storage medium, in every pending case. The prosecution must use reasonable care to prevent the "routine” erasure of master tapes containing recorded 911 emergency calls and radio runs by promptly notifying the police to preserve them at the commencement of every case.* **[5] If the prosecution fails to do so, fairness dictates that it be held accountable for their destruction. The police and prosecution act at their mutual peril should such tapes be "routinely” erased before copying, during the pendency of a criminal case.
The prosecution asserts that it satisfied its Rosario obligation by making available the Sprint printout, which it characterizes as a "duplicative equivalent”.[6] This assumption is *893 factually inaccurate and legally untenable. The Sprint printout is a computer-generated, encoded log of the tape’s contents. Prepared by the police as a summary for indexing purposes, it is not a verbatim transcript. Rather, it is a conclusory product of human judgment. It presents much the same problem as multiple hearsay. In the context presented, it must be considered self-serving.
Accordingly, the court finds that the prosecution, through both its own inaction and the police action imputable to the prosecution, inexcusably violated the Rosario rule.
III. BRADY VIOLATION
Defendant also argues that the subject tapes constitute Brady material, i.e., that they are exculpatory or otherwise favorable to the defense. The prosecution has a duty to preserve and disclose all such material whenever it comes into its possession. (Brady v Maryland, 373 US 83; People v Vilardi, 76 NY2d 67, supra.) Moreover, where the defense can make a reasonable showing that anything in the prosecution’s possession may be potentially favorable to the defense, it can seek its production and the prosecution is obliged to preserve it and make it available for examination. (See, People v Karpeles, 146 Misc 2d 53 [Crim Ct, Richmond County] [prosecution required to permit defense expert to independently test defendant’s postarrest blood sample]; People v Cruz, NYLJ, Oct. 1, 1990, at 25, col 5 [Crim Ct, NY County], supra [prosecution required to turn over, for in camera inspection, statements of witnesses whom the prosecution does not intend to call].)
Frequently, however, evidence may at first seem innocuous *894 or equivocal. Its significance may emerge only in comparison with other evidence; its helpfulness to one side or the other may become apparent only in the case’s later stages. (See, Pennsylvania v Ritchie, 480 US 39, 60.) Witnesses’ prior statements, by their nature, frequently fall into this category. Viewed in this light, all Rosario material is potential Brady material. That is why basic fairness, as codified in the Rosario rule, requires its automatic disclosure. (See also, People v Lumpkins, 141 Misc 2d 581 [Sup Ct, Kings County].)
There is no indication here that the police knew the contents of the tape before erasure or regarded them as favorable to the defense. Of course, there is no indication that defendant or anyone else had such knowledge. Having received the subpoena, the police were on notice that the subject tape was needed by the defense and the court, and knew or should have known that it contained recorded communications relevant to the action. The circumstances presented may not be sufficient to prove intentional violation, of the Brady rule; they do show that the police acted contrary to its spirit.
IV. REMEDY
The Criminal Procedure Law sets forth no particular penalty for disobedience of a subpoena. (See, CPL art 610.) The equivalent CPLR provisions therefore apply, as they do generally in criminal cases, absent a specific criminal provision. CPLR 2308 provides for punishment of the offender by either contempt or striking a party’s pleading; a $50 penalty and consequential damages may also be assessed. The remedies of contempt and striking a pleading have been long recognized at common law. (See, Shelp v Morrison, 13 Hun 110 [Sup Ct, Gen Term, 3d Dept] [complaint dismissed].)[7] The statute must be regarded as partial codification of the court’s inherent power to enforce its orders, maintain its authority and regulate the conduct of litigants and attorneys. (See, Levine v Bornstein, 13 Misc 2d 161 [Sup Ct, Kings County], affd 7 AD2d 995 [2d Dept], affd 6 NY2d 892 [complaint stricken]; Yates v Lansing, 9 Johns 395 [contempt]; Matter of Barnes, 204 NY 108 [contempt]; 4 Blackstone, Commentaries, at 283-288; 2 Cooley’s *895 Blackstone, at 1436-1441 [4th ed]; Evans and Stallman, Deferred Sentence: Common Law Alternative to Judge’s Dilemma, NYLJ, Nov. 24, 1982, at 6, cols 1, 2 ["Inherent Power”].) Choice of an appropriate sanction is a matter of sound judicial discretion. It must be proportionate to the wrong and reasonably related to vindicating the public and private interests offended.
There is no specific statutory penalty for ifosario-rule violations. Since the rule was a common-law creation (see, People v Rosario, supra) only later codified and expanded by the Legislature (see, CPL 240.44, 240.45), it must be viewed as grounded on the court’s inherent power to regulate the conduct of litigants and set standards for the fair administration of justice. Since the Legislature placed the codification in the discovery article, it can be assumed that it intended the full range of discovery sanctions to apply, including the court’s authority to "take any other appropriate action.” (CPL 240.70 [1].) The listed alternatives (further court order, continuance, protective order, preclusion of evidence or testimony) are thus illustrative and not exclusive. Because the Rosario rule, like the power to enforce court orders, is derived from the court’s inherent power, and is not a statutory creation, the Legislature may not limit the court’s choice of remedy.
When a Rosario violation occurs, the court must impose a sanction appropriate to the unique circumstances of the case; the choice of sanction is a matter of judicial discretion. (People v Martinez, 71 NY2d 937; People v Wallace, 76 NY2d 953; People v Parker, 57 AD2d 519 [1st Dept].) In selecting a sanction, the court should consider the nature of the violation; the level of the violator’s culpability; the degree to which the defendant has been prejudiced and the extent to which the prejudice can be remedied; and the degree to which the court and the truth-finding process have been prejudiced.
This case is uniquely disturbing. It confronts the court with official misconduct punishable as both a violation of the Rosario rule and as disobedience of a subpoena. Independently wrongful on either ground, the law enforcement action reveals itself as particularly egregious when simultaneously analyzed on both grounds.
The subpoenaed Rosario material at issue was completely destroyed. Accordingly, an interlocutory order (e.g., directing production), a conditional order (e.g., of preclusion for continued nonproduction), a continuance, or an order of commitment *896 (i.e., imprisoning the violator, until production) would be ineffectual when production is no longer possible.
The destruction was intentional, not inadvertent or nonnegligent. (Cf., People v Haupt, 71 NY2d 929 [interview notes lost or discarded during 16-year hiatus between crime and trial].) The police knew of the subpoena and knew, or should have known, their duty to honor it. They knew that the tape was still extant and was slated for erasure under their own rules. The prosecution knew or should have known that the police had the tape, that it constituted Rosario material and that it would be irretrievably lost unless police and prosecutor acted affirmatively to secure it. Passivity, in light of such knowledge and duty, is not merely negligence; it must be deemed willful misconduct. Defense counsel did not mislead the police or prosecution. No waiver or estoppel is presented. (Cf., People v Rogelio, 160 AD2d 359 [1st Dept] [interview sheets made available but defense attorney forgot to ask for them].)
The subject tape is relevant and material to the purpose of the suppression hearing; it may well be dispositive. (See, People v Vilardi, 76 NY2d 67, 77, supra; cf., People v Haupt, 71 NY2d, supra, at 931 [lost evidence had "little or no relevance” to principal trial issue, viz., defendant’s sanity at time of shooting].) Erasure therefore deprived defendant of more than possible impeachment material. By destroying an official contemporaneous record which might have differed from the officer’s account at the hearing, the police have prevented defendant from meaningfully challenging the legality of the stop and arrest. No monetary fine, penalty or sanction can repair the damage done to the defense.
The official misconduct has skewed the court’s ability to determine what actually happened and has thus rendered the directed Dunaway hearing a futile exercise. Were the court to draw a strong adverse inference from the erasure, equivalent to that included in a missing evidence jury charge,[8] a hearing would also be unnecessary. Under the circumstances presented, considering the allegations in the complaint, the bill of particulars and the motion papers, and given the apparent lack of other evidence, the People would have great difficulty *897 overcoming such adverse inference. Moreover, given the seriousness of the official misconduct and the irreparable harm done to defendant, the People should not be given the opportunity. (Cf., People v Martinez, 71 NY2d 937, 940, supra [People unaware of possible interview notes until trial; possibility of prejudice remote].)
There is no evidence that the police action here was intended as a contumacious act against the court, or that it was specifically intended to harm this defendant or his attorney. Notwithstanding the absence of subjective malice, it amounted to a willful disobedience of a court order which "threatens the power and dignity of the law itself.” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2308:2, at 330.) The police action thus could be punishable as a criminal contempt. While the stigma associated with a contempt is not inapposite, the scope of punishment under the contempt statute is inappropriate, given the prejudice to both defendant and the legal process.
Dismissal of the complaint is a "drastic remedy” (People v Kelly, 62 NY2d 516, 521), but it is the only remedy appropriate to these unusual circumstances.[9] (See, People v Churba, 76 Misc 2d 1028, 1032 [Crim Ct, NY County], supra [fraudulent repair prosecution dismissed after subject television and tapes lost due to "blatantly careless” procedures of Consumer Affairs Department].) Dismissal is required, not only to prevent injustice here, but to deter future repetition.
CONCLUSION
The erasure of the subject recorded radio communication constitutes an unjustified disobedience of a subpoena and a violation of the Rosario rule. Defendant’s constitutional rights to confrontation (US Const 6th Amend; NY Const, art I, § 6), compulsory process (US Const 6th Amend; NY Const, art I, § 6), due process (US Const 14th Amend; NY Const, art I, § 6) *898 and fair trial (US Const 6th Amend; NY Const, art I, §6) thereby have been abridged. Given the shared responsibility of the police and prosecutor, dismissal is the only appropriate remedy.
Accordingly, this action is hereby ordered dismissed.

. Many criminal practitioners seem aware of the police department erasure policy. Because many prosecutors chronically fail to request copies prior to erasure, many defense attorneys have perceived the need to subpoena tapes on a routine basis, to secure their preservation. Service of a subpoena unfortunately does not always guarantee that result. (See, United States v Nixon, 418 US 683.) In this court’s experience, the erasure policy is not universally known among criminal practitioners and prosecutors, and is even less familiar to civil practitioners, who increasingly require police tapes for civil litigation.

. To the extent that other cases appear to assume otherwise, this court disagrees, and declines to follow them. (E.g., People v Cachoian, 135 Misc 2d 1116 [Crim Ct, Bronx County] [dicta]; People v Din, NYLJ, Aug. 13, 1990, at 20, col 4 [Sup Ct, NY County].)

. In both civil and criminal cases, this court has all too frequently seen subpoenaed materials timely provided after cases have been resolved. Apparently, the attorneys who served the subpoenae never notified the recipients that the materials were no longer needed. Not only is such a practice discourteous and unprofessional, it places a costly administrative burden on the police department and impedes its ability to produce material still required in pending cases. Such practice could be curtailed by imposition of sanctions and costs under the courts’ rule-making powers.

. Other cases seem to suggest a subjective, no evidence of bad-faith standard for judging prosecutors’ conduct. (See, e.g., People v Figueroa, 156 AD2d 322 [1st Dept] [prosecutor and defense both incorrectly identified place and occurrence preventing police from locating tape prior to erasure].) That standard is qualitatively different from the objective due diligence standard of the Court of Appeals, which requires the prosecutor to act affirmatively *892 with reasonable care under the unique circumstances of each case. (See, People v Martinez, 71 NY2d 937; People v Haupt, 71 NY2d 929; People v Kelly, 62 NY2d 516.)

. The enormous volume of recorded police radio communications and civilian emergency calls to the 911 telephone operators, not all of which pertain to criminal cases, requires that conversations pertaining to criminal cases be promptly, particularly and accurately identified. Since the prosecution has the burden of producing them, it is appropriate to place the burden of notification on the prosecutor, not on the defense or the court. Once the police department and the District Attorney arrange a routine procedure for securing all such tapes, it is likely to be a lesser administrative burden than the current haphazard method of ad hoc response to both defense and prosecution requests.

. The People assume that one statement is the "duplicative equivalent” of another if it contains substantially the same data, irrespective of how or when it was generated. Construed so loosely, the term is oxymoronic. "Duplicative equivalent” denotes another form of the same statement, separately generated (e.g., a final version prepared from scratch notes or a rough draft). (Compare, People v Consolazio, 40 NY2d 446, 452-453, with People v Kass, 25 NY2d 123, 127.) The concept is inapposite to the situation at bar. In Consolazio, the prosecution failed to turn over worksheets containing questions used in case preparation and handwritten notes of the witnesses’ answers. The court held that these statements were "the same” as the witnesses’ Grand Jury testimony and deemed them "cumulative”. (Supra, at 454.) Whether the answers noted on the worksheets were the product of the witnesses’ Grand Jury testimony, or of prior interviews, is *893 not clear from the Court of Appeals opinion. The Appellate Division evidently had a doubt. (See, opn below, at 47 AD2d 863.) This ambiguity may be responsible for the overbroad misapplication of the "duplicative equivalent” concept frequently articulated by prosecutors. Whenever the prosecution has multiple recorded witness statements, even if it regards them as duplicative equivalents, it should disclose each of them. Even minor discrepancies may reveal transcriptional errors which alter the sense of an original oral statement. Closer inspection may reveal that the differing versions reflect multiple statements made at different times. In either case, even slight variations may evince a difference in nuance, degree or detail, if not substance or veracity. This, too, can be appropriate grist for cross-examination. The right to confrontation would be eviscerated if the prosecution were permitted to substitute its judgment for that of defense counsel, as to whether a prior statement is inconsistent with testimony (People v Poole, 48 NY2d 144; People v Ranghelle, 69 NY2d 56) or otherwise may have a bearing in credibility (People v Perez, 65 NY2d 154; People v Jones, 70 NY2d 547).

. One court recently analogized disobedience of a subpoena to violation of a discovery order and dismissed pursuant to its discretionary power to "take any other appropriate action” under CPL 240.70 (1). (People v Szychulda, 113 Misc 2d 736 [App Term, 2d Dept], affd 57 NY2d 719 [police willfully refused to submit subpoenaed personnel records, thereby preventing in camera inspection or other proper court action].)

. Notwithstanding the court’s charge, jurors, like lawyers and Judges, inevitably speculate about the contents and significance of missing evidence. Preservation of police communication tapes pendente lite would therefore eliminate one factor which distorts the truth-finding process.

. Preclusion of the witness’s testimony, ordinarily a lesser sanction than dismissal, may be appropriate for other Rosario violations not involving the circumstances at bar. If the witness were not called to testify, the recorded statement would not be considered Rosario material; absent other factors (e.g., the service of a subpoena), the People would not be obligated to turn over the statement. Here, however, preclusion of the arresting officer’s testimony would be tantamount to dismissal.