No. 99-406

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 97

299 Mont. 247

999 P. 2d 334

MARK BEST, JANE HOWELL, JOAN HURDLE, VERN

KLINGMAN, TOM TOWE and CLARENCE WILLIAMS,

Petitioners and Appellants,

v.

POLICE DEPARTMENT OF THE CITY OF BILLINGS

and THE CITY OF BILLINGS POLICE CHIEF TUSSING,

Defendants and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Elizabeth Brenneman (argued), American Civil Liberties Union

of Montana, Billings, Montana

For Respondents:

Brent Brooks (argued) City Attorney, Billings, Montana

For Amicus Curiae:

Charles F. Moses, Attorney at Law, Billings, Montana

Palmer A. Hoovestal, Attorney at Law, Helena, Montana

(for Montana Association of Criminal Defense Lawyers)

Hon. Joseph P. Mazurek, Attorney General; Chris D. Tweeten (argued),

Chief Counsel, Helena, Montana (for Montana Attorney General)

---

Argued: February 8, 2000

Submitted: February 14, 2000

Decided: April 17, 2000

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Mark Best and others (collectively, Citizens) filed an Application for Writ of Mandate against the Police Department of the City of Billings and City of Billings Police Chief Ronald Tussing to compel Chief Tussing to direct his police officers to comply with an order suppressing evidence entered by Judge Maurice R. Colberg, Jr. (Judge Colberg). The Thirteenth Judicial District Court, Yellowstone County, the Honorable G. Todd Baugh, presiding, denied the application and the Citizens appeal. We affirm.

¶2 The dispositive issue on appeal is whether the District Court erred in denying the Citizens' application for writ of mandate.

## BACKGROUND

¶3 The relevant facts in this case are not disputed. In Cause Numbers DC 98-214 and DC 98-219, in the Yellowstone County District Court, the State of Montana charged Mark Best (Best) and Rae Trotchie (Trotchie) with certain drug-related offenses. Best and Trotchie moved to suppress evidence obtained after a stop of the vehicle in which they were traveling on the grounds it was obtained in violation of their constitutional search and seizure rights.

¶4 On November 17, 1998, after an evidentiary hearing, Judge Colberg entered Findings of Fact, Conclusions of Law and Memorandum granting the motions to suppress. The court found that the vehicle, which was registered to Best, had been stopped for a suspected traffic offense and that the officer requested--and obtained--identifying information from the vehicle's occupants. Intending to write a warning citation for failure to have an illuminated license plate, the officer ran a warrants check on the persons in the vehicle. No warrants were outstanding, but the identity provided by one of the occupants-- later established to be Trotchie--was suspicious. Based solely on his knowledge that Best previously had been involved with drugs, the officer requested Officer Zidack (Zidack) to respond with his trained drug-detecting dog. ¶5 Prior to the dog's arrival, another officer responded to the scene of the traffic stop. Based on that officer's recognition of Trotchie, she was arrested for obstruction of justice for providing false identification. After Zidack arrived with his dog, pat-down searches were conducted of the vehicle's occupants. The search of Best produced a small box containing women's jewelry and what appeared to be marijuana; the box could not reasonably have contained a weapon.

¶6 The drug-detecting dog was then deployed and, upon circling the vehicle, "alerted" as to an indication by odor of the presence of illicit drugs. The dog then entered the vehicle through an open door and appeared to be detecting the odor of illegal drugs in the vicinity of the glove box. Officers then searched the vehicle and found drugs and drug paraphernalia upon which criminal charges against Best and Trotchie subsequently were based.

¶7 Judge Colberg concluded that the officer had a particularized suspicion to stop the vehicle for a suspected traffic offense. He also concluded that, while the dog sniff was a

search, it was the type of search for which particularized suspicion, rather than probable cause, was required. In that regard, the court concluded "[t]here was an insufficient particularized suspicion of illegal activity involving possession of drugs or contraband to allow the investigative tool of a dog sniff." Alternatively, the court concluded that the intrusion of the dog into the vehicle constituted a search without probable cause. Accordingly, the court granted the motions to suppress. Judge Colberg added a lengthy Memorandum to the Findings of Fact and Conclusions of Law which further explained his reasoning and which included his observation that the application of legal principles to cases in the search and seizure arena seems to "substantially depend on the factual nuances of each case." Judge Colberg ended his Memorandum as follows:

In conclusion, the motions to suppress of Best and Trotchie should be granted and all of the drugs and contraband found within the interior of the vehicle and alleged marijuana found in the 3 inch by 5 inch box located on the person of Best should be suppressed and not allowed to be utilized at trial.

¶8 The day after Judge Colberg's ruling, Best apparently was again in a vehicle stopped for a traffic violation. Best alleges that law enforcement officers again brought a drug-detecting dog to the scene which sniffed the exterior of the vehicle without particularized suspicion to believe illegal drugs were present. Without regard to the veracity of Best's allegations, the record reflects that, on that date, another Yellowstone County District Court Judge issued a search warrant authorizing the impoundment and search of the vehicle without requiring the particularized suspicion discussed in Judge Colberg's suppression order of the day before.

¶9 Subsequent to Judge Colberg's ruling, Chief Tussing was quoted in the *Billings Gazette* as stating he would not direct his officers to change their procedures to follow Judge Colberg's ruling on Best and Trotchie's motions to suppress. He also stated that, while failure to establish particularized suspicion in some cases might result in the dismissal of those cases, he would rely on the "court of public opinion." Chief Tussing later wrote a letter to the *Billings Gazette* stating that Judge Colberg's ruling was "not 'the law' " but that, if the Montana Supreme Court did not reverse the ruling, the ruling would be precedent by which he and his officers would be bound.

¶10 On December 23, 1998, the Citizens filed an Application for Writ of Mandate to compel Chief Tussing to direct his officers to comply with Judge Colberg's ruling. Thereafter, and prior to a hearing on the application, the *Billings Gazette* reported two

more incidents in which Best had been stopped and a drug-detecting dog deployed. Again, Chief Tussing responded publicly to those reports stating, among other things, that Judge Colberg's "ruling did not order the police to stop making such searches."

¶11 Chief Tussing subsequently moved to dismiss the application for writ of mandate and the matter was fully briefed and submitted to Judge Baugh on the basis of the parties' briefs.

Concluding that the Citizens had not established entitlement to a writ of mandate, Judge Baugh denied their application. The Citizens appeal.

¶12 It is important to note that Judge Colberg's ruling on Best and Trotchie's motions to suppress is not on appeal in this case. Therefore, we do not address the merits of that ruling or substantive arguments presented by the parties relating to search and seizure law in general and dog sniffs in particular.

## DISCUSSION

¶13 Did the District Court err in denying the Citizens' application for writ of mandate?

¶14 Section 27-26-102, MCA, sets forth the two requirements which must be met by a party seeking a writ of mandamus. The writ is available where the party applying for it is entitled to the performance of a clear legal duty by the party against whom the writ is sought and there is no speedy and adequate remedy in the ordinary course of law. Section 27-26-102, MCA; *Smith v. County of Missoula*, 1999 MT 330, ¶ 28, 297 Mont. 368, ¶ 28, 992 P.2d 834, ¶ 28. If the first part of the standard is not met--that is, if no clear legal duty is established--issuance of the writ is barred. *Newman v. Wittmer* (1996), 277 Mont. 1, 11-12, 917 P.2d 926, 932 (citations omitted).

¶15 Judge Baugh denied the Citizens' application for writ of mandate based on his conclusion that no clear legal duty was owed by Chief Tussing as a result of Judge Colberg's ruling. A district court's denial of a writ of mandate calls for a conclusion of law which we review to determine if it is correct. *Larson v. State, Dept. of Justice* (1996), 275 Mont. 314, 317, 912 P.2d 783, 785.

¶16 The Citizens advance a number of arguments on appeal which are unassailable and which are not disputed by Chief Tussing. They contend, for example, that it is the

province and duty of the judiciary "to say what the law is" and, indeed, this has been well established since *Marbury v. Madison* (1803), 5 U.S. (1 Cranch) 137, 177. Closely related to this fundamental principle is the doctrine of separation of powers between branches of government and the corresponding duty of members of the executive branch, including local law enforcement officials, to comply with lawful court orders. *See, e.g.,* Article III, Section 1, Mont. Const.; § 7-32-2121(5), MCA. Indeed, as the Citizens point out, municipal police are under the jurisdiction of courts based not on a court's jurisdiction over their persons, but because police departments are "chargeable with an independently existing duty to enforce the law." *See Boung Jae Jang v. Brown* (A.D. 2 Dept. 1990), 560 N.Y.S.2d 307, 312 (citations omitted).

¶17 From these premises, and in opposition to Judge Baugh's determination that court opinions are not usually an appropriate foundation for mandamus, the Citizens contend "there is no reason to believe that a district court ruling may not constitute a legal duty of a public officer that may be compelled by writ." In this regard, they cite to *Boung Jae Jang*, 560 N.Y.S.2d at 312 (citations omitted), for the proposition that a duty compelled by mandate may be "in the form of a judicial determination." It cannot reasonably be disputed that a court ruling *may* impose a duty which can be compelled via a writ of mandate.

¶18 The question before us here, however, is *whether* Judge Colberg's grant of Best and Trotchie's motions to suppress, on the basis that insufficient particularized suspicion existed to deploy a drug-detecting dog, imposed a clear legal duty on Chief Tussing which can be compelled by writ of mandate. The Citizens contend that Judge Colberg's ruling did just that; namely, that Judge Colberg determined the police "practice" at issue--the use of drug-detecting dogs without sufficient particularized suspicion--to be unconstitutional and that Chief Tussing has a clear legal duty to direct his officers to discontinue that particular "practice."

¶19 The first flaw in the Citizens' contention is their failure to point to any specific language in Judge Colberg's Findings of Fact, Conclusions of Law and Memorandum determining that a "practice" of the Billings Police Department is unconstitutional. Indeed, close scrutiny of Judge Colberg's ruling establishes that no such language is contained therein. It is true, as the Citizens contend, that Judge Colberg expressed a concern that the alleged traffic violation on which the stop was made was relatively insignificant and "one wonders if such a stop would have been made under different circumstances in a different part of town rather than the south side of Billings." Judge Colberg also commented that calling a drug-detecting dog to every traffic stop "appears" to be the Billings Police

Department's *modus operandi*. However, these comments and concerns fall far short of a determination that a "practice" was at issue in the Best and Trotchie cases and was, as a matter of law, unconstitutional.

¶20 In addition, Judge Colberg's ruling was made "[b]ased on the evidence" submitted at the evidentiary hearing and related solely to Best and Trotchie's motions to suppress certain evidence on the basis of law enforcement actions in stopping a particular vehicle. First, Judge Colberg entered extensive Findings of Fact detailing the events surrounding the traffic stop of the vehicle in which Best and Trotchie were passengers and the eventual deployment of the drug-detecting dog based on the knowledge of one of the officers "that Best had previously been involved in drugs[.]"

¶21 Judge Colberg then made Conclusions of Law "[f]rom the foregoing findings of fact [.]" The first conclusion was that the officer had a particularized suspicion to stop the vehicle at issue for a suspected traffic offense; the second was that "[i]n the context of this case[,]" the dog sniff was a search, but a search requiring only particularized suspicion. Judge Colberg's third conclusion was that "[t]here was an insufficient particularized suspicion of illegal activity involving possession of drugs or contraband to allow the investigative tool of a dog sniff." Both the findings and the conclusions clearly were based on the specific facts at issue in the case before Judge Colberg. By their terms, they neither direct action by nor impose a clear legal duty on Chief Tussing.

¶22 Moreover, the limitations of Judge Colberg's ruling were recognized repeatedly in his lengthy Memorandum. Judge Colberg stated "[a]t the outset it is noted that cases in the area in which we are dealing are very difficult to reconcile and the legal principles seem to substantially depend on the factual nuances of each case." In addition, "[e]ach case must be examined based on its particular facts to determine whether a particularized suspicion exists to justify an investigative stop." Finally, " '[t]he issue of whether or not a particularized suspicion existed in order to justify an investigatory stop is factually driven.' " These observations by Judge Colberg are, of course, in accord with our numerous cases holding that whether particularized suspicion exists "is a factually driven inquiry dependent upon the totality of circumstances giving rise to the investigative stop." *See, e. g., State v. Roberts*, 1999 MT 59, ¶ 13, 293 Mont. 476, ¶ 13, 977 P.2d 974, ¶ 13 (citation omitted). Because of the fact-specific nature of cases questioning the existence of particularized suspicion vis-a-vis a motion to suppress evidence, both the law and the language of Judge Colberg's ruling controvert the Citizens' contention that such a ruling imposes a clear legal duty on a law enforcement official to cease a "practice."

¶23 Nor is the Citizens' reliance on the underlying purposes of the "exclusionary rule"--that is, the rule excluding use of evidence obtained by law enforcement personnel via illegal or unconstitutional means--of any help to their position here that Judge Colberg's ruling imposed a clear legal duty on Chief Tussing. It is true, as the Citizens assert, that "[t]he exclusionary rule is meant to deter police from using illegal and unconstitutional methods of gathering evidence." *State v. Christensen* (1990), 244 Mont. 312, 319, 797 P.2d 893, 897; *see also State v. Long* (1985), 216 Mont. 65, 71, 700 P.2d 153, 157. The intent of the rule is to indirectly deter future, or prospective, conduct through the suppression of evidence in a given case based on a judicial determination that past police conduct did not meet constitutional search and seizure requirements. But, as discussed above from a somewhat different perspective, there is nothing prospective or directory about an order suppressing evidence pursuant to the exclusionary rule. Thus, while Chief Tussing's public statements about Judge Colberg's ruling on Best and Trotchie's motions to suppress may understandably cause the Citizens to question whether the intended deterrent effect of that ruling will be achieved, their concerns do not transform a fact-specific suppression ruling into a prospective clear legal duty.

¶24 Finally, the cases on which the Citizens rely to advance their argument that Judge Colberg's ruling directs prospective relief--and thereby imposes a clear legal duty--are readily distinguishable. In *Boung Jae Jang,* a court order directed at demonstrators also directed the New York Police Department to enforce its provisions; police officers attempted to enforce the order, but gave up upon meeting resistance. A writ of mandamus subsequently was issued to compel the Police Department to enforce the terms of the earlier order. *Boung Jae Jang*, 560 N.Y.S.2d at 309. In the present case, unlike *Boung Jae Jang*, Judge Colberg's ruling on the motions to suppress concluded that specific past actions had not met the legal standard required to deploy a drug-sniffing dog. It did not expressly direct action or enforcement by Chief Tussing.

¶25 Similarly, in *People v. Cortez* (N.Y.City Crim.Ct. 1990), 564 N.Y.S.2d 963, 964-65, the court issued a subpoena *duces tecum* ordering the New York Police Department to produce certain records in court in conjunction with a proceeding to determine questions relating to a stop and arrest; the Police Department neither complied nor moved to quash, but erased one of the tapes at issue. The court concluded that the erasure was an unjustifiable defiance of a court order subject to appropriate punishment. *Cortez*, 564 N.Y.S.2d at 966. Again, *Cortez* directed a specific action by the Police Department; Judge Colberg's ruling on the motions to suppress did not. Neither *Boung Jae Jang* nor *Cortez* has any application to the present case in which no directory language is contained in

Judge Colberg's ruling.

¶26 We conclude that the Citizens have not established the first prong of the test for issuance of a writ of mandate; namely, they have not established that Judge Colberg's ruling on Best and Trotchie's motions to suppress entitled them to the performance of a clear legal duty by Chief Tussing. As a result, issuance of the writ is barred. *See Newman*, 277 Mont. at 11-12, 917 P.2d at 932. Consequently, we need not address whether a speedy and adequate remedy exists in the ordinary course of law.

¶27 We hold that the District Court did not err in denying the Citizens' application for writ of mandate.

¶28 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART