**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Daniel J. GROOMS, Defendant–**
**Appellant.**

No. 00–3586.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 31, 2001.

Decided April 4, 2001.

Before Hon. BAUER, Hon. COFFEY, Hon. DIANE P. WOOD, Circuit Judges.

## ORDER

Daniel Grooms, convicted of one count of bank robbery and two counts of armed bank robbery, 18 U.S.C. § 2113(a), (d), challenges the district court's refusal to grant him a new trial based on the issuance of supplemental jury instructions and the failure of one of Grooms's witnesses to appear for trial. Grooms also disputes the increase in his offense level based on obstruction of justice, U.S.S.G. § 3C1.1. We affirm.

## Background

At Grooms's trial, government witness Ralph Flanders testified that he and Grooms jointly planned and committed three Indiana bank robberies, with Grooms driving the getaway car on each occasion. In contrast, Grooms testified that he had not committed any robberies with Flanders, that he had been involved in only one other robbery, which involved a man named Danny Giles, and that he first learned of the three robberies at issue here from Flanders.

Flanders initially told police detectives that he committed the robberies alone, and Grooms hoped to call one of those detectives, Eugene Eyster, to lay a foundation for admitting a tape of Flanders's earlier statement. Grooms's counsel averred that she mailed a copy of Eyster's subpoena to him at the South Bend Police Department along with a cover letter asking Eyster to phone her office upon receiving it, and counsel's secretary averred that Eyster indeed telephoned in response to the subpoena. The subpoena itself, however, indicates that it was served not on Eyster but on a "Rick Bishop" at the South Bend Police Department. Eyster did not attend Grooms's trial.

The jury began deliberations at approximately 12:50 p.m. on a Friday, and at 2:18 p.m. presiding juror Karen Ainsley passed a note to the court security officer:

> We need to know what will take place if we do not have a unanimous vote?

Grooms's counsel suggested that the jury be advised "that they need to continue unless they are firmly convinced that they will not get any further," but the district judge, concluding that the note did not clearly indicate deadlock, told the jury that he was "not in a position" to answer the question and instructed them to continue deliberating.

At 3:05 p.m., Ainsley sent a second note:

> We currently can[not] come up with a un[ani]mous decision. Our vote is 8 guilty and 4 not guilty on counts 1 thru 3.

Over defense counsel's objection, the court responded by re-reading one of the original jury instructions and directing the jury to continue deliberating:

> The verdict must represent the considered judgment of each juror. Your verdict, whether it be guilty or not guilty, must be unanimous. You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views. Change your opinion if you come to believe it is wrong. But you should not surrender your honest belief about the weight or effect of evidence solely because of the opinions of your fellow jurors or for the purpose of returning a unanimous verdict. You should give fair and equal consideration to all the evidence and deliberate with a goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts. Your only interest is to determine whether the government has proved its case beyond a reasonable doubt.[1]
>
> With that instruction, you may return to continue your deliberations.

At 7:25 p.m., Ainsley sent a third note asking for a definition of "reasonable doubt." Without objection, the court responded that it was not permitted to define reasonable doubt. The jury announced its verdict at 8:48 p.m., finding Grooms guilty on all three counts.

The district court denied Grooms's motion for a new trial and increased his offense level for each count by 2 based on obstruction of justice:

> Under the law, any defendant has every right to plead not guilty and to put the government to its proof. But no defendant has a right to testify falsely, to

---

**1.** The parties refer to this charge as a *"Silvern instruction"* because it is essentially the same as the instruction approved by this court in *United States v. Silvern*, 484 F.2d 879 (7th Cir.1973).

knowingly testify falsely, to material matters at trial. Such testimony amounts to obstruction of justice within the meaning of the Sentencing Guidelines. And you did testify falsely at your trial, and did so knowingly. You testified on direct examination that you were not involved in any of these bank robberies; that you first learned of the bank robberies when you were in jail with Mr. Flanders after Mr. Flanders gave a taped confession .... And you testified that the only bank robbery you ever had been involved in was one with Danny Giles. Those statements were all false, were all material, and were all knowingly made with the intent to obstruct justice. And I find each of those things by a preponderance of the evidence, based on the evidence presented at trial. You obstructed justice within the meaning of the Sentencing Guidelines, so your offense levels are increased by 2 levels on each count.

Grooms was sentenced to a total of 235 months imprisonment.

## Discussion

### I. Denial of Grooms's New Trial Motion

■ Grooms first argues that the district court's refusal to grant him a new trial was an abuse of discretion because "irregularities" surrounding the court's responses to the notes from the jury and Eyster's failure to appear had the cumulative effect of denying Grooms a fair trial. The decision to issue a supplemental jury instruction, as well as the wording of any such instruction, is within the district court's discretion. See, e.g., United States v. Lakich, 23 F.3d 1203, 1208 (7th Cir. 1994). We review the issuance of supplemental instructions for an abuse of discretion where a party has preserved the issue for appeal by making a proper objection at trial, see United States v. Alexander, 163

F.3d 426, 428 (7th Cir.1998), but only for plain error if the party fails to object on the precise ground urged as a basis for reversal on appeal, see Lakich, 23 F.3d at 1207; United States v. Wynn, 845 F.2d 1439, 1442 (7th Cir.1988).

■ Grooms argues that the district court's responses to the first two notes, taken together, gave the jury the erroneous impression that they were required to reach a verdict. Regarding the first instruction, Grooms observes that the court did not "answer the jury's specific question" and suggests that a better response would have included "an accurate statement about the general procedure the court follows" when a jury indicates an inability to reach a verdict. Because Grooms's objection at trial was not based on this theory (Grooms suggested that the jury be instructed to continue unless convinced further deliberations would be fruitless, but never proposed a generalized procedural instruction), we review only for plain error. But the instruction was not error—plain or otherwise—because a court has no obligation to "answer" a jury's question that is not directly germane to some issue the jury is required to resolve. See United States v. Cherek, 734 F.2d 1248, 1252 (7th Cir.1984). Here, an instruction on the court's procedures for dealing with potentially deadlocked juries would not have assisted the jury with its designated task: determining Grooms's guilt or innocence. Moreover, the supplemental instruction—essentially an instruction to continue deliberating—was not coercive in nature or effect. This court has repeatedly held that instructions to continue deliberations are not coercive, see United States v. Kramer, 955 F.2d 479, 489 (7th Cir.1992), and the passage of more than four hours between the instruction and the verdict suggests that the verdict could not have been the product of coercion, see

*United States v. DeStefano*, 476 F.2d 324, 337 (7th Cir.1973) ("[T]he fact that the jury continued to deliberate for at least four more hours after the supplemental charge was delivered indicates that instead of having the coercive effect of the majority running roughshod over the minority, the supplemental charge caused the jury to take additional time to deliberate."); *United States v. Bambulas*, 471 F.2d 501, 506 (7th Cir.1972) ("An additional fact attesting to the noncoercive nature of the charge is that the jury resumed deliberations for four additional hours.")

Grooms makes no independent objection to the second supplemental instruction, nor could he. He concedes that the jury's second note clearly indicated deadlock, and the *Silvern* instruction is the only permissible deadlock instruction. *See Silvern*, 484 F.2d at 883 & n. 7. Moreover, a *Silvern* instruction has been held to have "no plausible potential for coercing [a] jury." *United States v. Beverly*, 913 F.2d 337, 352 (7th Cir.1990). The instructions were not coercive either alone or in combination, and the district court did not err in issuing them.

■■■ Grooms also argues that a new trial was warranted because Eyster's nonappearance resulted in the denial of his Sixth Amendment right to compulsory process. But defendants bear the responsibility for using proper methods to secure their witnesses' presence in court, such as effecting personal service of subpoenas as required by Rule 17(d) of the Federal Rules of Criminal Procedure. Grooms concedes that he failed to comply with this requirement, and his noncompliance does not amount to a denial of compulsory process. *See United States v. Davenport*, 312 F.2d 303, 305 (7th Cir.1963); *Ferrari v.*

*United States*, 244 F.2d 132, 141–42 (9th Cir.1957).

Not until oral argument did Grooms provide an explanation for his failure to serve Eyster: the South Bend Police Department, Grooms's counsel asserted, prevents personal service of subpoenas on its officers.[2] The record contains no evidence of such a policy aside from counsel's assertions. We note, however, that it is difficult to conceive how such a policy could be constitutional given criminal defendants' right to compulsory process and federal judges' concomitant power to vindicate that right by issuing subpoenas. *See generally United States v. Nixon*, 418 U.S. 683, 711, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). A subpoena is a court order—not merely a demand of a party to litigation—and may not be circumvented by a local law enforcement agency. *Cf. People v. Cortez*, 149 Misc.2d 886, 564 N.Y.S.2d 963 (N.Y.Civ.Ct.1990) (police department's erasure of properly subpoenaed 911 master tapes because counsel failed to make timely "follow-up request" per department policy constitutes "unjustifiable defiance" of court order) ("When a law enforcement agency deliberately ignores a court order, it thereby undermines the rule of law itself. The Police Department can assert no unique privilege to pick over court orders and choose to enforce only those it deems worthy of enforcement. When the Police Department pursues a policy which arrogates to itself a veto power over the courts, it further erodes public confidence in law enforcement.") We need not decide whether such a policy would violate Grooms's right to compulsory process, however, because Grooms waived the argument on appeal by raising it for the first time at oral argument. *See Checkers*

---

2. Based on counsel's description at oral argument, we do not understand the department's policy to make the South Bend Chief of Police Eyster's designated agent for service of process, and accordingly we do not comment on the propriety of such a policy.

*Eight Ltd. Partnership v. Hawkins,* 241 F.3d 558 (7th Cir.2001). Moreover, Grooms failed to bring the problem to the attention of the district judge during the trial, when it could easily have been remedied by the grant of a continuance or the issuance of a forthwith subpoena. *See, e.g., United States v. Davis,* 15 F.3d 1393, 1406–07 (7th Cir.1994) (timely objections permit trial courts to rectify problems). Under these circumstances we would not view the district court's refusal to grant Grooms a new trial based on Eyster's non-appearance as an abuse of discretion.

II. Upward Adjustment for Obstruction of Justice

 Grooms also challenges the district court's decision to increase his offense level based on obstruction of justice, but his arguments are unfocused. Though he asserts that the district court's factual finding that he committed perjury is clearly erroneous, he offers no discussion whatsoever of the evidence. Rather, Grooms seems to suggest that the district court's findings on this point are *legally* insufficient, a question we review de novo rather than under the clearly erroneous standard. *See United States v. Freitag,* 230 F.3d 1019, 1025 (7th Cir.2000). Grooms acknowledges that the district court pointed to three instances in which he testified falsely on direct examination and that the court found by a preponderance that each statement was false, material, and made with the intent to obstruct justice, but Grooms seems to suggest that three false statements are not enough. The law is clear, however, that even one instance of obstructing justice mandates an upward adjustment. *See United States v. Pippen,* 115 F.3d 422, 425 (7th Cir.1997). Grooms also hints that the district court's findings were not independent, but the independence requirement means only that the court may not rely solely on the conclusions of the jury. The requirement is satisfied if the court makes its own findings, even if it reaches the same conclusions as the jury. *See United States v. Bonilla–Comacho,* 121 F.3d 287, 293 (7th Cir.1997). *See also United States v. Mitchell,* 64 F.3d 1105, 1108 (7th Cir.1995) (distinguishing independent finding of perjury from mere reliance on jury verdict that necessarily rejects defendant's testimony). Grooms's real argument seems to be that § 3C1.1 provides for an "automatic" upward adjustment for defendants who take the stand in their own defense but lose and that it interferes with a defendant's right to testify. But the Supreme Court foreclosed both of these arguments in *United States v. Dunnigan,* 507 U.S. 87, 96–97, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), explaining that defendants have no right to commit perjury and that requiring the district court to make specific findings ensures that the adjustment is not applied automatically.

Because Grooms has failed to demonstrate that the district court's decisions to deny him a new trial and to increase his offense level were erroneous, we AFFIRM the judgment of the district court.