No. 95-452

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

RICHARD S. LARSON, ENOCH E. RICHWINE, TODD
C. DUPUIS, ROBERT L SHORES, JOHN HERAK,
RODNEY L. SMART, ROLAND B. McKINLEY,
WILLIAM DOUGLAS BAROCH, MR. and MRS. MARK
GILROY, MARY DELANEY SCHOEPF, VERLIN A. SNOWBERG,
SR., L.L.S. BROWNELL, JENNIFER L. McGINNIS,
MR. and MRS. GEORGE R. MAHONEY, KATHY J. KORF,
MR. and MRS. ROBERT A. PIERCE, PATRICIA ANNE
EARLEY, CALVIN BROWN, BERTON N. SHULTZ, HAROLD
F. ALEXANDER, MR. and MRS. JAMES W. JONES and
THOMAS M. JONES, SONNY BENSON, WILLIAM N. FREER,
FRED L. GILLEARD, C. DOUGLAS MORIGEAU, MR. and
MRS. RICHARD J. WHEELER, CHARLES S. JENNISON,



FILED

FEB 27 1996

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

Petitioners/Applicants and Appellants,

v.

STATE OF MONTANA, DEPARTMENT OF JUSTICE, GAMBLING
CONTROL DIVISION and its ADMINISTRATOR, JANET JESSUP,

Respondents and Respondents.

APPEAL FROM:   District Court of the Twentieth Judicial District,
               In and for the County of Lake,
               The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

               Dexter L. Delaney, Brian L. Delaney, Attorneys at
               Law, Missoula, Montana

        For Respondents:

               Hon. Joseph P. Mazurek, Attorney General,
               Clay R. Smith, Ass't Attorney General,
               Helena, Montana

                              Submitted on Briefs:   January 4, 1996

                                       Decided:   February 27, 1996

Filed:

_____
              Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The appellants in this case (Business Owners) appeal from an order of the Twentieth Judicial District Court, Lake County, denying their petition for a writ of mandamus directing the State of Montana, Department of Justice, Gambling Control Division (State) to issue gambling licenses and permits to them. We affirm.

The issue on appeal is whether the District Court erred in denying the Business Owners' petition for a writ of mandamus.

The relevant facts in this case are undisputed. The Business Owners operate various businesses located within the exterior boundaries of the Flathead Indian Reservation, which is "Indian country" as defined in 18 U.S.C. § 1151. In the past, the Business Owners have been licensed by the State to operate video gambling machines, which are gambling devices under the Johnson Act, 15 U.S.C. § 1171, and Class III gaming under the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2703.

In 1993, the United States Attorney for the District of Montana issued a press release stating that Class III gaming would no longer be lawful on Indian lands absent a Tribal-State compact properly executed pursuant to 25 U.S.C. § 2710(d). In May of 1994, on the basis of the United States Attorney's determination regarding Class III gaming, the State notified the Business Owners by letter that it would not process gambling license and permit applications. In the State's view, the operation of video gambling

machines on the reservation would be unlawful under the Johnson Act and IGRA. The Confederated Salish and Kootenai Tribes of the Flathead Indian Reservation and the State still have not executed a compact for Class III gaming.

In September of 1994, the Business Owners filed a petition for a writ of mandamus directing the State to issue the gambling licenses and permits to them as required by §§ 23-5-176(2) and 23-5-612(1), MCA. The District Court issued an alternate writ ordering the State to issue the licenses and permits or to show cause why it had not done so. Thereafter, the parties agreed to vacate the show cause hearing; they subsequently submitted the case for resolution under stipulated facts. The District Court denied the Business Owners' petition for a writ of mandamus and the Business Owners appeal.

Did the District Court err in denying the Business Owners' petition for a writ of mandamus?

Section 27-26-102, MCA, sets forth the two requirements which must be met by a party seeking a writ of mandamus. The party must demonstrate both an entitlement to the performance of a clear legal duty and the absence of a speedy and adequate remedy in the ordinary course of law. Section 27-26-102, MCA; Franchi v. County of Jefferson (Mont. 1995), 908 P.2d 210, 212, 52 St.Rep. 1229, 1230. "A negative answer to the first question bars the issuance of the writ, and, irrespective of the answer to that question, an affirmative answer to the second, divests the court of authority to issue it." State ex rel. Chisholm v. District Court (1986), 224 Mont. 441, 443, 731 P.2d 324, 325 (quoting State ex rel. County of

3

Musselshell v. District Court (1931), 89 Mont. 531, 534, 300 P.2d 235, 236).

The District Court denied the Business Owners' petition for a writ of mandamus based on its conclusion that the State did not have a clear legal duty to issue the gambling licenses and permits. A district court's denial of a writ of mandamus calls for a conclusion of law which we review to determine if it is correct. Franchi, 908 P.2d at 212 (citing Phillips v. City of Livingston (1994), 268 Mont. 156, 161, 885 P.2d 528, 531).

The Business Owners argue that they qualified for gambling licenses and permits under the applicable Montana statutes and administrative rules and, therefore, the State was required by the mandatory language of §§ 23-5-176 and 23-5-612, MCA, to issue the licenses and permits. They point out that the State's refusal to process their applications was based on its interpretation of IGRA, but that nothing in the Montana statutes allows the State to refuse to issue licenses and permits on that basis. They contend that the District Court erred in concluding that the State did not have a clear legal duty to issue the licenses and permits and, on the basis of that conclusion, in denying their petition. The Business Owners also contend that IGRA does apply to them because they are non-Indians.

The State argues that it does not have a clear legal duty to issue gambling licenses and permits to the Business Owners because, absent a Tribal-State compact, Class III gaming on the Flathead Indian Reservation is unlawful under IGRA. The State argues that

4

the Business Owners cannot compel it to issue licenses and permits for an activity unlawful under federal law.

The resolution of this case requires consideration of the interplay between state and federal law regarding gambling. Montana gambling statutes are contained in Title 23, Chapter 5 of the Montana Code Annotated. Section 23-5-176, MCA, provides in relevant part:

> (1) A person who the department determines is qualified to receive a license under the provisions of this chapter may, based on information available to, required by, or supplied to the department under department rules, be issued a state gambling license.
> (2) Except as provided in subsection (4), the department shall issue a license unless the department can demonstrate that the applicant:
> (a) is a person whose prior financial or other activities or criminal record:
> . . . .
> (iii) . creates a danger of illegal practices, methods, or activities in the conduct of gambling or in the carrying on of the business and financial arrangements incidental to gambling;
> . .

(Emphasis added.) Section 23-5-612(1), MCA, provides that "[t]he department, upon payment of the fee provided in subsection (2) and in conformance with rules adopted in this part, shall issue to the **operator an annual permit** for an approved video gambling machine." (Emphasis added.)

On a stand-alone basis, these Montana statutes mandate the issuance of licenses and permits so long as the applicant is qualified and pays the appropriate fee, and the State does not establish one of the statutorily-enumerated bases for denial. The State argues that it demonstrated a specific, statutorily-authorized basis for denial of the Business Owners' applications.

5

Based on its interpretation that IGRA prohibits the operation of video gambling machines on the Flathead Indian Reservation, the State maintains that licensing the Business Owners "creates a danger of illegal . . . activities in the conduct of gambling . ." under § 23-5-176(2)(a)(iii), MCA.

The State misreads the statute. As specifically provided in § 23-5-176(2)(a), MCA, an application can be denied under (iii) only where the State demonstrates that the applicant's "prior financial or other activities or criminal record" creates the danger of the illegal gambling activity. Here, the State's argument is entirely unrelated to these Business Owners and the State made no showing that anything in any of the Business Owners' backgrounds created the danger of illegal gambling. Thus, we reject the State's contention that § 23-5-176(2)(a)(iii), MCA, specifically authorized it to refuse to process the Business Owners' applications.

Notwithstanding our rejection of the State's contention, however, it is clear that federal legislation specifically addresses and regulates gambling on Indian reservations. Because the Business Owners seek to conduct gambling operations on the Flathead Indian Reservation, these federal statutes must be considered in conjunction with §§ 23-5-176 and 23-5-612, MCA.

In 1951, Congress enacted the Johnson Act, 15 U.S.C. §§ 1171-1178. In pertinent part, the Johnson Act provides that "[i]t shall be unlawful to manufacture, recondition, repair, sell, transport, possess, or use any gambling device . . in any possession of the

6

United States, within Indian country as defined in section 1151 of title 18 . ." 15 U.S.C. § 1175(a). "Indian country" is defined, insofar as it is relevant here, as "all land within the limits of any Indian reservation under the jurisdiction of the United States Government . . . ." *18* U.S.C. § 1151(a).

In 1988, Congress enacted IGRA, 18 U.S.C. §§ 1166-1168 and 25 U.S.C. §§ 2701-2721. IGRA provides specific exceptions to the Johnson Act regarding gaming on Indian reservations. IGRA separates gaming into three classes. See *25* U.S.C. § 2703. Here, the parties stipulated that only Class III gaming is at issue. See 25 U.S.C. § 2703(8). Class III gaming is unlawful on Indian lands, which, under IGRA, 25 U.S.C. § 2703(4)(A), is land within the limits of any Indian reservation, unless three requirements are met, one of which is the existence of a Tribal-State compact. 25 U.S.C. § 2710(d)(1). No Tribal-State compact exists between the State and the Confederated Salish and Kootenai Tribes.

State law which conflicts with the purpose and operation of a federal statute, regulation or policy is preempted by the federal law. See Cabazon Band of Mission Indians v. Wilson (9th Cir. 1994)) *37* F.3d 430, 433 (citing Crow Tribe of Indians v. Montana (9th Cir. 1987), *819* F.2d *895, 898, aff'd 484* U.S. 997, 108 S.Ct. *685,* 98 L.Ed.2d 683 (1988)). Congress has explicitly stated its policies and purposes in enacting IGRA. See *25* U.S.C. § 2702. One such purpose is

> to declare that the establishment of independent Federal
> regulatory authority for gaming on Indian lands, [and]
> the establishment of Federal standards for gaming on
> Indian lands . . . are necessary to meet congressional

7

> concerns regarding gaming and to protect such gaming as a means of generating tribal revenue.

25 U.S.C. § 2702(3). IGRA establishes a comprehensive regulatory scheme for gaming on Indian lands. See United Keetoowah Band of Cherokee Indians v. State of Oklahoma, ex rel. Moss (10th Cir. 1991), 927 F.2d 1170, 1176 (citations omitted). If IGRA does apply to the Business Owners, then State licensure of Class III gaming under these facts would frustrate the federal policy underlying IGRA by licensing the Business Owners pursuant to Montana statutes to conduct activities prohibited by federal law absent a Tribal-State compact.

The Business Owners concede that an appropriate federal court with jurisdiction has yet to rule on the applicability of IGRA to non-Indians such as themselves and that the issue is outside the scope of this mandamus case. A ruling by such a court in favor of the Business Owners could result in the State having a clear legal duty to issue gambling licenses and permits to the Business Owners. Absent such a ruling, however, and given the apparent conflict between Montana licensing statutes and federal statutes regulating gambling on Indian lands, we conclude that no clear legal duty exists requiring the State to issue gambling licenses and permits to the Business Owners.

Issuance of a writ of mandamus is precluded in this case by the Business Owners' failure to demonstrate entitlement to the performance of a clear legal duty. See State ex rel. Chisholm, 731 P.2d at 325. We hold, therefore, that the District Court did not err in denying the Business Owners' petition for a writ of

mandamus.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

9