No. 97-199

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 83N


DENNIS RAY WOLDSTAD,

Plaintiff and Appellant,

v.

JAMES DUPONT a/k/a JIM DUPONT,
FLATHEAD COUNTY SHERIFF, as
provided in § 7-32-2131, MCA, and
DOES 1 though 10 inclusive,

Defendants and Respondents.


APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Katherine R. Curtis, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Richard L. Musick, Kalispell, Montana

For Respondent:

Stephen C. Berg, Warden, Christiansen, Johnson & Berg,
Kalispell, Montana


Submitted on Briefs: August 14, 1997

Decided: April 14, 1998
Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    Dennis Ray Woldstad (Woldstad) brought this action in the District Court for the Eleventh Judicial District, Flathead County, to recover damages from the Flathead County Sheriff, James Dupont (Dupont), for failing to levy on a Writ of Execution.  Woldstad and Dupont filed cross motions for summary judgment.  The court granted portions of each party's summary judgment motion and awarded Woldstad judgment in the amount of $200. Woldstad appeals the District Court's order.  We remand for further proceedings consistent with this opinion.

¶3    Woldstad raises the following issues on appeal:

¶4    1.  Whether the District Court erred in failing to grant Woldstad's motion for summary judgment for the value of personal property other than the contract for deed.

¶5    2.  Whether the District Court erred in ruling that the July 22, 1994 injunction was still in effect as to the contract for deed after the court's April 27, 1995 order.

Factual and Procedural Background

¶6    Woldstad was the respondent in a marital dissolution case filed in June 1993, by Martha Doyle Woldstad (Martha).  Martha failed to appear at a hearing in the matter, and, in the May 17, 1994 dissolution decree, Woldstad was awarded $30,000 of the equity in the family home; personal property, or its replacement value, as set forth in a list attached to the decree; $900 per month maintenance for 24 months; and Woldstad's attorney's fees amounting to $4,000.  Woldstad was ordered to pay $1000 of the balance on a note for equipment.

¶7    Martha attempted to have the judgment set aside claiming to have been suffering from mental illness at the time of the hearing which prevented her from appearing.  Then District Judge Michael Keedy failed to rule on Martha's motion to set aside the judgment, thus, by operation of law, the motion was deemed denied after 60 days.  Martha appealed to this Court on January 18, 1995, and we dismissed the appeal as untimely.

¶8    Martha held a vendor's interest in a contract for deed.  On July 21,

1994, she filed a motion for a temporary injunction seeking to enjoin the sheriff from selling her interest in the contract to satisfy the judgment. Judge Keedy granted Martha's motion and ordered that all monies paid on the contract be held in escrow pending further order of the court. On January 30, 1995, Woldstad requested and was issued a Writ of Execution representing that Martha owed him more than $135,000. Woldstad attempted to execute against the escrow account, but on February 8, 1995, District Judge Katherine Curtis stayed execution of the writ against the funds held in the escrow account.

¶9 On April 5, 1995, Martha filed a parallel civil action against Woldstad contending fraud. District Judge Ted Lympus issued a temporary restraining order (TRO) in the fraud action on April 21, 1995, enjoining any attempt to levy against personal property owned by Martha. Woldstad filed a challenge for cause of Judge Lympus in the fraud action pursuant to § 3-1-805, MCA. The challenge for cause was later denied following a hearing.

¶10 On April 27, 1995, Judge Curtis ordered the funds held in the escrow account pursuant to Judge Keedy's July 22, 1994 order released to Woldstad. On May 3, 1995, Woldstad obtained a Writ of Execution from a deputy clerk of the Eleventh Judicial District Court. The praecipe attached to the Writ of Execution contained an extensive list of property available for execution, including the contract for deed. Woldstad wanted Martha's interest in this contract for deed sold at a sheriff's sale, however, Dupont refused to execute on any of the property. Instead, his clerk telephoned Woldstad's counsel on May 16, 1995, stating that Dupont believed the TRO issued by Judge Lympus in the fraud action was still in effect. Dupont did not mark his return on the writ nor return it to the clerk of court for filing.

¶11 On June 9, 1995, Woldstad filed a motion to remove the TRO and on June 12, 1995, Martha filed an application for a preliminary injunction. Judge Lympus recused himself from the fraud action on June 14, 1995, and on August 11, 1995, District Judge Michael Prezeau accepted jurisdiction of the case. On September 29, 1995, Judge Prezeau issued a TRO enjoining Woldstad from seeking to levy upon Martha's personal property and on October 18, 1995, Judge Prezeau issued a preliminary injunction enjoining Woldstad from levying upon the escrow account containing the proceeds of the sale of the contract for deed.

¶12 Woldstad filed a complaint on September 29, 1995, seeking damages from Dupont for Dupont's failure to levy upon the writ. He also claimed that Dupont failed to properly return the writ and he sought as damages the value of all personal property not executed upon. Dupont filed his Answer on December 8, 1995, generally setting forth affirmative defenses justifying his failure to honor the writ.

¶13 Woldstad and Dupont filed cross motions for summary judgment. Woldstad argued that during the period between May 2, 1995, and September 29, 1995, there was no injunction or restraining order relieving Dupont of his duty to execute on Martha's property. Woldstad contended that Judge Keedy's

July 22, 1994 order had been revoked by the April 27, 1995 order of Judge Curtis. Woldstad also contended that the TRO issued by Judge Lympus on April 21, 1995, expired on May 1, 1995, ten days after it was issued, thus, the TRO was not enforceable on May 3, 1995, when the writ was issued. Dupont argued that there were orders still in effect prohibiting execution on the writ, that an action for damages pursuant to § 7-32-2131, MCA, is not the proper remedy, and that the writ was returned by way of the telephone call to Woldstad's counsel.

¶14 On January 21, 1997, Judge Curtis issued her Order on Motions for Summary Judgment and Rationale concluding that mandamus does not lie in this case and granting portions of each party's summary judgment motion. Judge Curtis determined that there was a valid court order in effect at the time the writ was issued enjoining a sheriff's sale of the contract for deed, thus it was not property "liable to be levied upon or sold" as required by § 7-32-2131, MCA.

¶15 Judge Curtis ruled that although the April 21, 1995 TRO of Judge Lympus did expire after ten days, the July 22, 1994 order of Judge Keedy was still in effect when the May 3, 1995 writ was issued. She characterized the Keedy order as having two components, one component dealing with the contract for deed itself and one component dealing with the funds held in escrow from payments on the contract for deed. Judge Curtis stated that her order of April 27, 1995, only dealt with the funds held in escrow, not with the contract for deed itself. She therefore concluded that since an order prohibiting execution on the contract for deed was still in effect, Dupont was not liable to Woldstad for damages. However, Judge Curtis did determine that Dupont had not made a proper return on the writ and that Woldstad was entitled to judgment in the amount of $200 pursuant to § 7-32-2131(1), MCA. Woldstad appeals.

### Standard of Review

¶16 Our standard of review in appeals from summary judgment rulings is de novo. Motarie v. N. Mont. Joint Refuse Disposal (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. We set forth our inquiry in Bruner as follows:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

Bruner, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

Discussion

¶17 Before engaging in a discussion of the issues raised in this case, we address Dupont's contention that Woldstad's proper remedy was to seek a writ of mandate pursuant to § 27-26-101, MCA, to compel Dupont to levy upon the property listed in the Writ of Execution. Dupont argues that Woldstad has no claim for damages until he has tested the return through a writ of mandate.

¶18 There are two requirements that must be met by a party seeking a writ of mandate. First, the party must demonstrate an entitlement to the performance of a clear legal duty, and, second, the party must demonstrate the absence of a speedy and adequate remedy in the ordinary course of law. Section 27-26-102, MCA; Larson v. State, Dept. of Justice (1996), 275 Mont. 314, 317, 912 P.2d 783, 785. See also Franchi v. County of Jefferson (1995), 274 Mont. 272, 275, 908 P.2d 210, 212; State v. Dept. of Social & Rehab. Serv. (1995), 274 Mont. 157, 161, 906 P.2d 204, 206; Becky v. Butte-Silver Bow Sch. Dist. 1 (1995), 274 Mont. 131, 135, 906 P.2d 193, 195).

¶19 "A negative answer to the first question bars the issuance of the writ, and, irrespective of the answer to that question, an affirmative answer to the second, divests the court of authority to issue it." Larson, 275 Mont. at 317, 912 P.2d at 785 (citing State ex rel. Chisholm v. District Court (1986), 224 Mont. 441, 443, 731 P.2d 324, 325; State ex rel. Musselshell County v. District Court (1931), 89 Mont. 531, 534, 300 P. 235, 236).

¶20 In the case before us, Woldstad meets the first requirement for a writ of mandate because, by statute, he is entitled to the performance of a clear legal duty:

> If the sheriff to whom a writ of execution or attachment is delivered neglects or refuses, after being required by the creditor or his attorney, to levy upon or sell any property of the party charged in the writ which is liable to be levied upon or sold, he is liable to the creditor for the value of such property.

Section 7-32-2131(2), MCA. This subsection of the statute has been in effect in this identical form for more than 75 years. In an early case analyzing this statute, this Court stated that it "not only furnishes a remedy, but is itself a legislative declaration that the remedy so provided is prima facie plain, speedy and adequate." State ex rel. Duggan v. District Court (1922), 65 Mont. 197, 201, 210 P. 1062, 1063.

¶21 In Duggan, this Court went on to hold that where a judgment is for money, an action for damages furnishes a plain, speedy and adequate remedy. Duggan, 65 Mont. at 200, 210 P. at 1063. On the other hand, if the applicant for the writ is entitled to the possession of specific property, an action for damages is not an adequate remedy. Duggan, 65 Mont. at 201, 210 P. at 1063.

¶22 Dupont contends that the Writ of Execution in the instant case was for specific personal property rather than for money, thus, a writ of mandate rather than an action for damages is the proper remedy. We disagree. The Writ of

Execution indicates a specific monetary balance due on the judgment.  Granted that attached to the writ are several lists of personal property, however, all of this property was to be sold to satisfy the monetary judgment.  One list enumerates various items belonging to Martha and it specifically directs that the "earliest execution and sale on the above items will be most appreciated."  This list also states that the "Land Contract previously attached by the Flathead County Sheriff in this cause [is] to be set for Sheriff's Sale at the next available opportunity."  In addition, this list references the personal property that the dissolution decree directed was to be returned to Woldstad and states that this property is also subject to sale to satisfy the monetary judgment.

¶23  Just because the Writ of Execution in this case includes lists of personal property does not mean that the writ was intended to be solely for the return of that property.  As already noted, most of  this property was expressly directed to be sold to satisfy the monetary judgment. Therefore, we conclude that the writ was for monetary damages and under Duggan, where a judgment is for money, an action for damages does provide a speedy and adequate remedy.  Duggan, 65 Mont. at 200, 210 P. at 1063.

¶24   Furthermore, under § 7-32-2131(1), MCA:

> If the sheriff does not return a notice or process in his possession with the necessary endorsement thereon without delay, he is liable to the party aggrieved for $200 and for all damages sustained by him.   [Emphasis added.]

Thus, if Dupont failed to do what was required of him and he is liable to Woldstad for damages, then it was appropriate for Woldstad to file an action for damages.

¶25  Issuance of a writ of mandate in this case would have been precluded because Woldstad did have a speedy and adequate remedy, namely, filing an action for damages.  As we noted previously, where there is an adequate legal remedy, the district court has no authority to issue a writ of mandate.  Larson, 275 Mont. at 317, 912 P.2d at 785.

Issue 1.

¶26  Whether the District Court erred in failing to grant Woldstad's motion for summary judgment for the value of personal property other than the contract for deed.

¶27  The May 3, 1995 Writ of Execution included a list of Martha's personal property to be seized and sold to satisfy the money judgment.  Included within this list, along with the contract for deed, were a computer, a laser printer, a slide projector, a photocopier,  binoculars, several revolvers, a rifle, televisions, and furniture.  Dupont failed to seize any of this property as commanded by the writ claiming that there was an order in effect prohibiting his execution on that property.  Woldstad moved for summary judgment contending that during the period between May 2, 1995, and September 29, 1995, there was no injunction or restraining order relieving Dupont of his duty to seize Martha's property.  Woldstad also contended that he was entitled to

judgment under § 7-32-2131(1), MCA, for Dupont's failure to make a proper return on the writ.

¶28 The District Court, in its January 21, 1997 Order on Motions for Summary Judgment and Rationale, ruled on the contract for deed and the funds generated therefrom, but made no mention of Martha's other personal property. The District Court did, however, rule that Dupont had not made a proper return on the writ and awarded Woldstad $200 pursuant to § 7-32-2131(1), MCA. Woldstad contends on appeal that the District Court erred in failing to rule on that portion of his motion for summary judgment wherein he sought damages from Dupont for failing to seize Martha's property as commanded in the writ. Dupont contends that he is not liable to Woldstad for damages for failing to seize the property and that the District Court erred in concluding that he was liable to Woldstad for $200 for failing to make a proper return on the writ.

¶29 On May 16, 1995, Dupont's clerk notified Woldstad's attorney by telephone that the writ would not be executed upon because Dupont believed an order was still in effect preventing execution. Dupont contends that this method of return was sufficient.

¶30 Return of execution is provided for in § 25-13-404, MCA:

> (1) Except as provided in subsections (2) and (3), execution may be made returnable to the clerk of the court in which the judgment was rendered, at any time not less than 10 or more than 60 days after receipt of the recovery by the sheriff or levying officer following imposition of levy, as provided in 25-13-402.
>
> (2) The writ of execution issued by the county treasurer under 15-16-401 may be made returnable, at any time not less than 10 or more than 90 days after its receipt by the sheriff or levying officer, to the county treasurer of the county in which the writ was issued.
>
> (3) In compliance with the provisions of subsection (1) and in lieu of returning the writ of execution to the clerk of the court, the sheriff may enclose his return of the writ in an envelope to the officer, agent, or attorney who sent it and deposit it in the post office, prepaying the postage.

This statute contemplates either filing the return with the clerk of court or mailing it to opposing counsel. Either way, the statute contemplates an actual physical return of the writ. Thus, to be a proper return in the instant case, Dupont had to either return the writ to the clerk of the court as provided in subsection (1), or mail it to the officer, agent, or attorney who sent it as provided in subsection (3). Dupont did neither.

¶31 Therefore, under § 7-32-2131(1), MCA, since Dupont did not "return [the] notice or process in his possession with the necessary endorsement thereon," he is liable to Woldstad for $200 "and for all damages sustained by" Woldstad. However, absent any findings by the District Court on the issue of

whether Dupont was liable to seize Martha's other personal property and, having failed to do so, whether he should be liable for damages, we remand to the District Court for findings and conclusions on that issue.

Issue 2.

¶32 Whether the District Court erred in ruling that the July 22, 1994 injunction was still in effect as to the contract for deed after the court's April 27, 1995 order.

¶33 In its January 21, 1997 Order on Motions for Summary Judgment and Rationale, the
District Court determined that the July 22, 1994 Order of Judge Keedy regarding the contract for deed was still in force and effect at the time the May 5, 1995 Writ of Execution was issued, therefore, Dupont was justified in not executing on the writ. Woldstad contends that this was error on the part of the District Court because the court's April 27, 1995 Order released all restraints on his executing against the contract for deed.

¶34 There are four orders relating to the matters raised in this appeal: (1) Judge Keedy's July 22, 1994 Order Granting Motion for Injunction; (2) the February 8, 1995 Order of Judge Curtis; (3) the April 21, 1995 Temporary Restraining Order of Judge Lympus; and (4) the April 27, 1995 Order and Rationale of Judge Curtis. We will analyze each of these orders in turn to determine which, if any, of these orders may have been in force and effect at the time the May 5, 1995 Writ of Execution was issued.

¶35 The July 22, 1994 order of Judge Keedy provided:

> That the Sheriff's sale scheduled for the 25th of July, 1994, in which Dennis Ray Woldstad attempts to sell the interest of Martha Doyle Woldstad in a certain Contract For Deed dated July 13, 1993 between John C. Doyle and Martha Doyle as Sellers and Steve Fairbanks and Jill Fairbanks as Buyers is hereby enjoined to further order of this Court
> That the escrow agent, Escrow Services, Inc., is hereby Ordered to turn over all funds received under the terms of the above described contract to the Clerk of Court of Flathead County, Peg. L. Bitney, to be held by her in an interest bearing account pending further Order of this Court.

This order has two components, the first enjoining execution on the contract for deed, and the second directing that the funds received by the escrow agent under the contract for deed be held by the clerk of court until further order of the court.

¶36 The February 8, 1995 Order stayed an earlier writ of execution. It commanded that any funds removed from the escrow account established by the July 22, 1994 order be returned to that account and retained by the bank until such time as the court issued a further order. Hence, this order is merely to reinforce the earlier order enjoining execution on the escrow account.

¶37   The April 21, 1995 order of Judge Lympus temporarily enjoined Woldstad and his attorney from levying upon the escrow account or any other personal property owned by  Martha.  Woldstad contends that, pursuant to § 27-19-316, MCA,  this order expired before the Writ of Execution was issued. Section 27-19-316, MCA, provides, in pertinent part;

> Contents and filing of restraining order granted without notice.  Each temporary restraining order granted without notice must:
>
>      . . .
>
> (4)  except as provided in 40-4-121 or Title 40, chapter 15, expire by its terms within the time after entry, not to exceed 10 days, as the court or judge fixes.

There are no cases construing this statute.  Nonetheless, the plain language of the statute requires that a TRO granted without notice must expire within ten days.  "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted."  Section

1-2-101, MCA.  Therefore, we hold that the April 21, 1995 order expired ten days after it was entered.

¶38   This April 21, 1995 order was the only one of the four orders to enjoin levying upon any personal property owned by Martha other than the contract for deed or the escrow account.  Since this order expired, by operation of law, on May 1, 1995, Martha's personal property, other than the contract for deed and the escrow account, was available for execution under the May 5, 1995 writ.

¶39   The April 27, 1995 order of Judge Curtis released to Woldstad "the funds on deposit in this matter pursuant to this Court's Order of July 22, 1994."  However, Judge Curtis did not release the contract for deed itself. Therefore, the July 22, 1994 order enjoining execution on the contract for deed was still in force and effect at the time the May 5, 1995 Writ of Execution was issued.

¶40   We note that when a writ of execution is facially valid, it should not be left up to the sheriff to decide what orders are in effect or not in effect and what property should be seized or not seized.  The sheriff should simply be required to execute on a facially valid writ of execution, seize the property in accordance with the law, and, if the other party disagrees with the writ of execution, that party should be required to go to court to obtain an order to quash the writ.

¶41   Under § 7-32-2131(2), MCA, the damages for failure of a sheriff to levy as requested only apply to property "which is liable to be levied upon or sold."  In the case before us, while the July 22, 1994 order enjoining execution on the contract for deed was still in force and effect, there was no injunction or TRO preventing Dupont from levying upon Martha's personal property as listed in the May 5, 1995 Writ of Execution or on the funds in the escrow

account.  Hence, Dupont may be liable to Woldstad for damages for failing to execute on the writ.  The amount of those damages is in question, however.

¶42  Dupont contends that Woldstad expanded by fiat the $33,000 money judgment he obtained against Martha in the dissolution decree on May 17, 1994, into a $141,000 judgment on June 22, 1994, all without an order of the court as required by paragraph 10 of the dissolution decree.  Accordingly, we remand to the District Court for an evidentiary hearing on the issue of damages.

¶43  Remanded to the District Court for further proceedings consistent with this opinion.

/S/  JAMES C. NELSON

We Concur:

/S/  WILLIAM E. HUNT, SR.
/S/  JIM REGNIER
/S/  TERRY N. TRIEWEILER
/S/  W. WILLIAM LEAPHART